# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-3534
_____

United States of America

*Plaintiff - Appellee*

v.

Joseph Keck, Jr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: January 14, 2021
Filed: June 29, 2021

_____

Before LOKEN, GRASZ, and KOBES, Circuit Judges.

_____

GRASZ, Circuit Judge.

Joseph Keck was convicted in the district court[1] on five child-pornography-related counts. *See* 18 U.S.C. §§ 2251(d); 2252(a)(2), (a)(4)(B). Without a warrant, federal agents seized Keck's electronic devices from his van. A later warrant-

---

[1]The Honorable James M. Moody, Jr., United States District Judge for the Eastern District of Arkansas.

supported search of those devices revealed that Keck had downloaded and shared child pornography. The district court denied Keck's suppression motion, holding that the warrantless seizure of the devices was justified. The court listed several alternative Fourth-Amendment theories to support its decision.

Keck appeals that ruling, arguing that the warrantless seizure of his devices was unconstitutional and unjustified. He also argues that the evidence was insufficient to support his conviction. For the reasons stated below, we affirm.

## I. Background

In 2016, the Swiss federal police told the Federal Bureau of Investigation that an internet protocol ("IP") address in Arkansas was distributing child pornography on a file sharing website known as GigaTribe. The FBI tied the IP address to Matthew Fee. Agents then questioned him. Fee, a former local law enforcement officer who was then at a police academy, pointed the FBI agents to his future father-in-law, Joseph Keck. Fee's fiancée Danika (Keck's daughter) did too.

Keck worked as a long-haul trucker and stayed at the Fees' house periodically when he was in town. Several years earlier, Keck had spent thirty days in jail and paid a $16,000 fine for a child-pornography conviction.

When the agents first made contact with the Fees on a Friday night, the couple consented to the seizure and search of their personal electronic devices. Those searches came up empty. The following Monday, the FBI discovered that another jurisdiction was investigating Keck for child-pornography-related crimes. The Fees told the agents that they expected Keck to return to their house that afternoon.

The lead agent on the case asked his supervisor and the FBI's in-house legal counsel for advice. He was advised that (1) the FBI could lawfully seize Keck's electronic devices without a warrant to prevent Keck from destroying them, and (2) the agents needed to do so as soon as Keck returned to town.

When Keck arrived at the Fees' house on Monday, two FBI agents were there waiting for him. They pulled their vehicles next to Keck's van in the Fees' driveway, got out, and questioned him. Keck told them he had come from Atlanta and had slept at a West Memphis, Arkansas hotel. The agents told Keck they needed his electronic media.

Keck gathered his devices—including two laptops, a cell phone, a portable hard drive, and a memory card—from his van. Initially, he only turned over two devices. But after the agents told him that lying to the FBI during an investigation is a felony, he went back to the van and got the rest. During the encounter, the agents did not yell or threaten Keck, and he could not see their guns.

After obtaining a search warrant for Keck's devices, the FBI's examination revealed twelve file-sharing accounts associated with Keck's computers. An Oklahoma-based FBI investigation had previously linked one of those accounts to child pornography. Another account had used an IP address from the West Memphis hotel where Keck told the agents he had stayed the night before they seized his devices. One of the laptops contained a folder, which in turn contained sub-folders with thousands of downloaded child pornography videos and images.

The government charged Keck with five crimes: two counts of receiving child pornography, and one count each of possessing, advertising, and attempting to distribute child pornography. *See* 18 U.S.C. §§ 2251(d); 2252(a)(2), (a)(4)(B). Keck moved to suppress the evidence recovered from his electronic devices. The district court denied that motion without written order, reasoning that the warrantless seizure was justified by (1) the consent exception, (2) the exigent-circumstances exception, or (3) the inevitable-discovery doctrine. At trial, the jury returned a guilty verdict on all counts. The district court sentenced Keck to 300 months of imprisonment and five years of supervised release.

## II. Analysis

On appeal, Keck first argues that the district court wrongly denied his suppression motion because no exception to the Fourth Amendment's warrant requirement applies. He next argues that the evidence against him is insufficient to support his conviction for the attempted distribution of child pornography.

### A. Suppression Motion

In the context of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo. *See United States v. McCoy*, 847 F.3d 601, 605 (8th Cir. 2017). We affirm the denial unless it "is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made." *United States v. Farnell*, 701 F.3d 256, 260–61 (8th Cir. 2012) (quoting *United States v. Rodriguez-Hernandez*, 353 F.3d 632, 635 (8th Cir. 2003)). We may affirm on any ground supported by the record. *See United States v. Murillo-Salgado*, 854 F.3d 407, 414 (8th Cir. 2017).

The Fourth Amendment protects against "unreasonable searches and seizures[.]" U.S. Const. amend. IV. While the "ultimate touchstone" of any Fourth Amendment analysis is "reasonableness," *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006), the Supreme Court has long held that a warrant is required for all searches and seizures, unless an exception to the warrant-requirement applies. *See Groh v. Ramirez*, 540 U.S. 551, 559–60 (2004).

One such exception, long-recognized by the Court, is the automobile exception. *See Carroll v. United States*, 267 U.S. 132, 149 (1925); *Collins v. Virginia*, 138 S. Ct. 1663, 1669–70 (2018) (explaining the two rationales behind the exception: the "ready mobility" of vehicles and their "pervasive regulation"). The automobile exception is a categorical one: "Probable cause to believe that an automobile contains contraband or evidence of criminal activity has long been held

to justify a warrantless search of the automobile and seizure of the contraband." *United States v. Shackleford*, 830 F.3d 751, 753 (8th Cir. 2016). "Probable cause exists, when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *Murillo-Salgado*, 854 F.3d at 418 (quoting *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003)).

The Supreme Court has clarified that the automobile exception's scope extends to the "automobile and the containers within it where [officers] have probable cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991). The upshot is that law enforcement may seize an item inside a car if a "fair probability" exists to believe the item is or contains evidence of a crime. *Murillo-Salgado*, 854 F.3d at 418; *see, e.g.*, *United States v. Martin*, 806 F.2d 204, 207–08 (8th Cir. 1986) (upholding the seizure of gun parts from a truck under the automobile exception when the officer had probable cause to believe they were evidence of a crime). This includes electronic evidence. *See, e.g.*, *United States v. Gaskin*, 364 F.3d 438, 458 (2d Cir. 2004) (concluding that the automobile exception justified the seizure of electronics the agents had probable cause to believe were linked to a crime); *United States v. Trevino*, 388 F. Supp. 3d 901, 906 (W.D. Mich. 2019) (same).[2]

---

[2]While some courts have held that the automobile exception allows the government to seize electronics located inside vehicles *and* search their contents, *see, e.g.*, *United States v. Davis*, 787 F. Supp. 2d 1165, 1171 (D. Or. 2011), we need not reach that issue because the FBI used a warrant to search Keck's devices. *See United States v. Brooks*, 715 F.3d 1069, 1075 (8th Cir. 2013) ("In this case, it is unnecessary to decide whether a cell phone is a container for purposes of the automobile exception[.]"); *see also United States v. Burgess*, 576 F.3d 1078, 1087–90 (10th Cir. 2009) (discussing the issue but ultimately resolving the case on other grounds because the agents had a search warrant); *cf. Riley v. California*, 573 U.S. 373, 386 (2014) (holding that searching a person's phone incident to their arrest violated the Fourth Amendment, but not discussing the application of that holding within the automobile-exception context).

Before the FBI agents met Keck in the Fees' driveway, they knew that someone associated with the Fees' IP address had downloaded child pornography. And two people—one of whom was Keck's daughter—had indicated that Keck was the likely culprit. The agents had confirmed that none of the Fees' devices contained child pornography, which further supported Keck as the primary suspect as well as a belief that he had the devices with him on the road. They also knew that Keck had previously committed a child-pornography-related crime. Based on these facts, there was a "a fair probability that contraband or evidence of a crime would be found" in Keck's vehicle, *Murillo-Salgado*, 854 F.3d at 418, and from the outset, the agents could search Keck's van and seize any items that they had probable cause to believe contained evidence of a crime.

While this situation may differ from a run-of-the-mill application of the automobile exception, we see no reason why it should not apply here. Based on the evidence from the FBI agents' pre-seizure investigation, a "fair probability" existed both that (1) Keck's van contained electronic devices, and (2) those devices contained child pornography. Because the automobile exception allowed the officers to search Keck's van and to seize any materials that they had probable cause to believe were contraband, seizing Keck's devices from his van was constitutional.[3]

## B. Sufficiency of the Evidence

We turn next to Keck's sufficiency-of-the-evidence challenge to his conviction for attempted distribution of child pornography. *See* 18 U.S.C. § 2252(a)(2). We review this challenge de novo, "view[] the evidence in a light most favorable to the verdict[,] and accept[] all reasonable inferences supporting the verdict." *United States v. Colton*, 742 F.3d 345, 348 (8th Cir. 2014). This "strict" standard means that we will overturn his conviction "only if no reasonable jury could

---

[3]Because seizing Keck's devices is justified under the automobile exception, we need not analyze the other exceptions that the district court discussed. *See Murillo-Salgado*, 854 F.3d at 414.

have found [the defendant] guilty beyond a reasonable doubt." *United States v. Bell*, 477 F.3d 607, 613 (8th Cir. 2007).

To prevail, Keck needs to show that "no reasonable jury could have" found him guilty. *Id.* The government put on evidence that Keck had installed GigaTribe on his computer, knew how to operate it, and kept an immense collection of child pornography images and videos on his devices. His laptop alone contained thousands of files of child pornography, which any in-network users could have downloaded using Gigatribe. And the evidence showed that he regularly chatted with other users and provided them with his password.

We conclude that this evidence, taken together, supports Keck's conviction. He has failed to show that "no reasonable jury could have" convicted him. *See United States v. Hill*, 750 F.3d 982, 987–89 (8th Cir. 2014) (rejecting a defendant's sufficiency-of-the-evidence challenge to his child-pornography convictions when evidence showed that he had downloaded images of child pornography onto his computer and had distributed those images with a file-sharing program).

Keck argues that *United States v. Durham*, 618 F.3d 921 (8th Cir. 2010), supports reversal. But *Durham* differs for three reasons. First, it involved a sentencing enhancement, while this case involves a charge of attempted distribution. *Id.* at 922, 925. Second, Durham did not install the file-sharing program and did not know much about it. *Id.* at 923–24. Here, the jury heard evidence that Keck installed GigaTribe and knew about its operation. Third, Durham had no child pornography in his shared folders, whereas Keck had thousands of images and videos of child pornography in his GigaTribe folders and actively offered to share them with others. *Id.* Thus, *Durham* does not advance Keck's sufficiency-of-the-evidence challenge.

## III. Conclusion

For the reasons stated above, we affirm.

_____