# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2404
_____

United States of America

*Plaintiff - Appellee*

v.

James Anthony Wilkins, Jr.

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau
_____

Submitted: December 17, 2021
Filed: February 9, 2022
_____

Before LOKEN, SHEPHERD, and STRAS, Circuit Judges.
_____

LOKEN, Circuit Judge.

After James Anthony Wilkins, Jr. pleaded guilty to a felon in possession of a firearm charge, a jury convicted him of two other charges, forcibly assaulting, resisting, or impeding law enforcement with a dangerous weapon in violation of 18 U.S.C. §§ 111(a)(1) and (b), and brandishing a firearm in furtherance of this § 111 offense in violation of § 924(c)(1)(A)(ii). Wilkins appeals, arguing insufficient

evidence to convict beyond a reasonable doubt, and that the district court[1] improperly instructed the jury on the elements of the § 111 offense.  We affirm.

## I. Background

On February 28, 2015, United States Marshals Clark Meadows and Michael Miller and Cape Girardeau Police Sergeant Joe Hann proceeded to a Cape Girardeau, Missouri motel to arrest Wilkins, who was wanted by Mississippi officials in connection with a nightclub shooting.  The motel clerk referred the officers to Room 210, where the occupant recognized a photo of Wilkins, referred them to Room 206, and said Wilkins had a gun.  During the two-day trial, the government called nine witnesses, including the three officers who knocked on the door of Room 206, and Kacey Romans, who answered their knock and opened the door.  Their testimony was corroborated by a cell phone video of the encounter.

When the officers knocked at Room 206, Wilkins, who had seen officers in the motel parking lot, told Romans to answer the door.  He went into the bathroom to dispose of drug contraband and hide his firearm.  Romans initially told the officers she did not know if Wilkins was there.  Through the open door, the officers saw Wilkins "poke his head out of the bathroom" and asked Romans to leave the room for her safety.  As Romans left, she said Wilkins might have a gun.  The officers then issued repeated, loud commands that the person in the bathroom drop his firearm and come out with his hands up.  Wilkins remained in the bathroom for two or three minutes, initially to complete flushing his drug contraband.  He told the officers he had a gun, briefly displayed it, and said "Don't shoot me."  The officers said, "We're not going to shoot you."

---

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri

Marshal Meadows testified that while Wilkins was hiding in the bathroom, Meadows could see him holding the gun so it could easily be fired. When Wilkins finally came to the bathroom doorway, Meadows and Sgt. Hann testified they saw him turn and raise the gun. Interpreting this as an "immediate" and "deadly" threat, both fired at Wilkins, striking him in the chest. Meadows testified that he shot only after Wilkins "took a deliberate step out of the [bath]room facing . . . straight towards us and was coming up with the gun . . . pointing towards us." Hann confirmed that Wilkins in leaving the bathroom raised his gun "from a low waist position . . . toward his upper torso, which [Hann] interpreted as a firing platform." "There is nothing [Wilkins] did that I could interpret as surrender." Marshal Miller, whose view was limited by his ballistic shield, testified that Wilkins ignored the officers' repeated commands to surrender and drop his gun. Wilkins, testifying in his own defense, admitted to hiding in the bathroom with a gun and refusing to follow officers' commands. He claimed that, in trying to surrender, he put the gun on the floor and was shot as he rose up. Wilkins received medical care for his serious injury and was taken into custody.

At the close of the evidence, the district court denied Wilkins's timely motion for judgment of acquittal. Consistent with Eighth Circuit Model Criminal Jury Instruction 6.18.111, the court instructed the jury without objection that the government must prove that Wilkins forcibly assaulted, resisted, opposed, impeded, intimidated or interfered with any of the officers, and that the conduct was done "voluntarily and intentionally." The jury convicted Wilkins of both charges.

## II. Sufficiency of the Evidence

On appeal, Wilkins argues the district court erred in denying his acquittal motion because the evidence at trial addressed only the officers' beliefs about his intentions; therefore, the government failed to prove that he voluntarily and intentionally used his gun to forcibly assault, resist, oppose, impede, intimidate, or

interfere with law enforcement, as 18 U.S.C. § 111(b) requires. We review whether the evidence was sufficient under a strict standard of review. "[W]e will affirm if, after viewing the evidence in the light most favorable to the verdict, a reasonable jury could have found the defendant guilty beyond a reasonable doubt." United States v. Henderson, 11 F.4th 713, 715 (8th Cir. 2021).

Like its 1934 predecessor, 18 U.S.C. § 111 "effectuate[s] the congressional purpose of according maximum protection to federal officers by making prosecution for assaults upon them cognizable in the federal courts." United States v. Feola, 420 U.S. 671, 684 (1974). As relevant here, the statute provides:

> **(a) In general.** -- Whoever --
>
> > **(1)** forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties . . .
>
> shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both . . .
>
> **(b) Enhanced penalty.** -- Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

The district court properly instructed the jury that physical contact is not necessary to satisfy the force element of § 111. All that is required is such a "threat or display of physical aggression toward the officer as to inspire fear of pain, bodily harm, or death." United States v. Schrader, 10 F.3d 1345, 1348 (8th Cir. 1993), quoting United States v. Walker, 835 F.2d 983, 987 (2d Cir. 1987). "The proper

-4-

standard for determining whether the requisite degree of force was displayed, therefore, is an objective one, *i.e.*, whether the defendant's behavior would reasonably have inspired fear in a reasonable person." Walker, 835 F.2d at 987.

"[T]o incur criminal liability under § 111 an actor must entertain . . . the criminal intent to do the acts therein specified." Feola, 420 U.S. at 686. "Accordingly, intent to use the weapon is a necessary element [of a § 111(b) offense], and a defendant who does so purely by accident does not come within the scope of § 111(b)." United States v. Arrington, 309 F.3d 40, 45 (D.C. Cir. 2002). Wilkins argues the evidence was insufficient to prove he acted voluntarily and intentionally because "[t]he evidence presented was that of the mental state of the other players."

The government was not required to present direct evidence of Wilkins's subjective intent. Rather, the officers' trial testimony describing Wilkins's actions amply demonstrates the required intent. Instead of immediately surrendering, Wilkins purposely hid in the bathroom with a loaded weapon and ignored officers' commands for over two minutes. He told them he had a weapon and briefly displayed it in what at least one officer thought was a threatening manner. This placed the officers in an exposed position, attempting to detain an armed, concealed suspect who could fire on them without warning. Marshal Meadows agreed the standoff was "about as dangerous a situation as [he had] been into." Wilkins admitted the relevant facts but testified he never intended to threaten or harm the officers, told them he would not shoot, and was trying to surrender. As in United States v. Wallace, the jury faced competing accounts of the events, and "the verdict reflects that the jury credited [the officers'] account . . . [which] provides sufficient proof that [Wilkins] acted voluntarily and intentionally." 852 F.3d 778, 783 (8th Cir. 2017). Accordingly, like the district court, we conclude the evidence was more than sufficient to support the jury's verdict. See Henderson, 11 F.4th at 716 (jury credibility findings "are virtually unreviewable on appeal").

-5-

### III. The Jury Instruction Issue

Jury Instruction Number 7 set forth the elements of Count 1, the § 111 charge. As relevant here, it informed the jury that the first element of § 111 requires proof that "the defendant forcibly assaulted, resisted, opposed, impeded, intimidated or interfered with [law enforcement] with a dangerous weapon." At the instructions conference, Wilkins objected that this instruction risked a non-unanimous verdict because the verbs were listed in the disjunctive so "one juror will think that it's resisting but nothing else and another juror might think there was intimidating but nothing else." The district court overruled this objection.

Wilkins abandons this contention on appeal. Instead, he contends that the instruction failed to inform the jury that "forcibly" is a required element for each of the six alternative acts that violate § 111. Without explicit clarification, Wilkins argues, the jury may have believed that "forcibly" only applied to assault, and thus based its conviction on a finding that he merely possessed the gun and "interfered" with law enforcement. Wilkins first raised this issue in his post-conviction motion for new trial, which would normally preserve it, if at all, only for plain error review on appeal. See United States v. Spencer, 998 F.3d 813, 818 (8th Cir. 2021), cert. denied, __ S. Ct. __ (2022); Fed. R. Crim. P. 30(d). But we need not decide that question because we conclude the claim of instruction error is without merit.

We review challenges to jury instructions under a deferential abuse of discretion standard and "will not find error when the jury instruction fairly and adequately submitted the issue to the jury." United States v. Stanley, 891 F.3d 735, 739 (8th Cir. 2018) (cleaned up). The district court adapted Instruction 7 from the Eighth Circuit Model Criminal Jury Instruction 6.18.111. It directly tracked the statutory language in §§ 111(a) and (b). In Schrader, we confirmed that "the adverb 'forcibly' was intended to modify each of the verbs which succeeded it." 10 F.3d at 1349 (quotation omitted). We noted that an instruction similar to Instruction 7 in this

case "was ambiguous . . . standing alone." Id. But we reversed because, unlike in this case, the district court incorrectly ruled during the instruction conference that "forcibly" modifies only "assaults," and the government so advised the jury during its closing argument. Id. Here, by contrast, this issue was not discussed during the instructions conference. After the district court published Instruction 7, both the government and defense counsel's closing arguments, as well as the verdict form, reinforced the plain meaning of Instruction 7 -- the force element applies to each of the underlying acts, not just to an assault.[2]

The Series-Qualifier Canon of statutory construction reinforces the plain meaning of Instruction 7: "When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive . . . modifier normally applies to the entire series." Scalia & Garner, Reading Law: The Interpretation of Legal Texts 147 (2012). In rejecting a similar challenge to a § 111 instruction, the Eleventh Circuit observed, "[a]s a matter of grade-school grammar, the adverb 'forcibly' necessarily modifies each of the listed verbs that follows it." United States v. Gumbs, 964 F.3d 1340, 1347 (11th Cir. 2020), cert. denied, 141 S. Ct. 1282 (2021). However, this issue has generated some concern. In Arrington, 309 F.3d at 47, for example, the D.C. Circuit advised that, when the "forcibly" issue is timely raised, "to avoid uncertainty, it is . . . the better practice for the trial court to advise the jury . . . you must find beyond a reasonable doubt that the defendant acted forcibly."

Here, the issue was not timely raised, so we need not consider whether a district court might abuse its discretion if it chose not to follow the D.C. Circuit's advice in a particular case. Rather, we must view Instruction 7 in the "context of the overall charge to the jury" and "assess whether there is a reasonable likelihood that the jury instructions, taken as a whole, misled the jury to convict the defendant based

---

[2]Defense counsel argued the jury should find reasonable doubt whether Wilkins was "intentionally and forcibly trying to resist or interfere with these officers."

on an incorrect standard." <u>United States v. Haynie</u>, 8 F.4th 801, 805 (8th Cir. 2021) (quotation omitted).  Applying this standard, we conclude Instruction 7 was not an abuse of the district court's discretion to fashion appropriate instructions, much less plain error.

The judgment of the district court is affirmed.

_____