# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-2969

_____

United States of America

*Plaintiff - Appellee*

v.

Jade LaRoche

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota - Central
_____

Submitted: June 16, 2023
Filed: October 4, 2023
_____

Before LOKEN, ERICKSON, and KOBES, Circuit Judges.
_____

LOKEN, Circuit Judge.

Around 2:30 a.m. on October 31, 2021, Jade LaRoche's mother, Josephine Skunk, called local dispatch and said an officer needed to come by because her son was "acting up." Bureau of Indian Affairs Officer Justin Schmiedt was dispatched to Skunk's home, learning on the way that LaRoche had an active tribal arrest warrant. Ms. Skunk invited Schmiedt into the living room and told LaRoche to join

them. After a short conversation, Schmiedt told LaRoche he was "going to have to take you because you got that warrant." LaRoche fled to the garage, pursued by Schmiedt, where LaRoche knocked Schmiedt down and escaped.

A grand jury indictment charged LaRoche with forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with a federal officer and inflicting bodily injury in violation of 18 U.S.C. § 111(a)(1) and (b). After a two day trial, the jury acquitted LaRoche of that charge but convicted him of the lesser included offense of forcible assault of a federal officer involving physical contact in violation of § 111(a)(1). The district court[1] sentenced LaRoche to 44 months imprisonment. He appeals, raising numerous evidentiary issues and challenging the assessment of a two-level sentencing increase because Schmiedt "sustained bodily injury." See USSG § 2A2.4(b)(2). We affirm.

## I. Evidentiary Issues

**A. Denial of LaRoche's Motion to Suppress.** LaRoche timely moved to suppress the statements he made when Officer Schmiedt came to his mother's house knowing there was an outstanding warrant for LaRoche's arrest, arguing the statements were made during custodial interrogation without the warnings required by Miranda v. Arizona, 384 U.S. 436, 444 (1966). After an evidentiary hearing at which Schmiedt testified at length, the record was supplemented with a dash cam audio recording of Schmiedt's colloquy with LaRoche in the home. In a lengthy Report and Recommendation, Magistrate Judge Mark Moreno recommended that the motion be denied, concluding that LaRoche was not in custody for purposes of Miranda, that "none of Schmiedt's inquiries amounted to impermissible interrogation," and that the statements were not involuntary. The district court in a

---

[1]The Honorable Roberto A. Lange, Chief Judge of the United States District Court for the District of South Dakota.

five-page Opinion and Order overruled LaRoche's objections, adopted the Report and Recommendation, and denied the motion to suppress. On appeal, LaRoche argues he was in custody, he was subjected to interrogation, and his statements were not voluntary. We review the legal issues of custody, interrogation, and voluntariness *de novo*, and any underlying factual findings for clear error. See United States v. Sanchez-Velasco, 956 F.3d 576, 579 (8th Cir. 2020) (custody and interrogation); United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004) (en banc) (voluntariness), cert. denied, 543 U.S. 1145 (2005).

1. Custody. An individual is in custody if there is "restraint on freedom of movement of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983) (quotation omitted). This is an objective inquiry that turns on how a reasonable person in the suspect's position would have understood the situation. Stansbury v. California, 511 U.S. 318, 323-24 (1994). The district court concluded that LaRoche was not in custody during his fifteen-minute conversation with Schmiedt that preceded LaRoche's flight:

> Judge Moreno credited the testimony of Schmiedt who stated that he only asked LaRoche questions regarding the status of his warrant to build a rapport with LaRoche who plainly did not wish to go into custody. Schmiedt's questions [were intended] to assess the situation the officer faced. . . .
>
> This Court also agrees with Judge Moreno's conclusion that the conversation between LaRoche and Schmiedt was: (1) relatively brief, amicable, and one LaRoche steered; (2) took place in a familiar and relaxed setting and in the company of LaRoche's mother; (3) did not involve any display of weapons, physical force, or heavy-handed tactics on the part of Schmiedt; (4) went on without restraint to LaRoche's freedom of movement; and (5) ended when LaRoche ran off to his bedroom. The mere fact that Schmiedt may have been standing between LaRoche and the front door does not mean that LaRoche was in custody. Indeed, Schmiedt's purpose in conversing with LaRoche seems to have

been to get LaRoche to submit himself to custody peacefully, while LaRoche's purpose in the conversation appears to have been to try to talk Schmiedt out of taking him into custody.

After review of Schmiedt's hearing testimony and the dash cam audio transcript, we agree. LaRoche argues, citing United States v. Boucher, 909 F.2d 1170, 1174 (8th Cir. 1990), that the interaction was custodial because Schmiedt "announced" the arrest early on by saying "let's take care of [the warrant]." But the relevant question is "how a reasonable person in the suspect's position would have understood the situation." Id. (quotation omitted). Here, the amicable conversation -- dominated by LaRoche -- occurred in his mother's home, a non-custodial atmosphere. Schmiedt testified he did not know what the warrant was based on. LaRoche fled only *after* Schmiedt later told him he would be arrested, confirming that LaRoche initially believed or at least hoped that he could avoid immediate arrest.

2. Interrogation. Interrogation occurs when an officer "should know" that his statements "are reasonably likely to elicit an incriminating response." Rhode Island v. Innis, 446 U.S. 291, 301 (1980). This issue "focuses primarily upon the perceptions of the suspect, rather than the intent of the police." Id. LaRoche argues that the conversation became interrogation when Schmiedt asked, "[s]o what's the warrant for? Do you know what it's for?" But prior to that question, LaRoche had acknowledged the warrant and vaguely described that it involved dealings with BIA Officer Moran. We agree with Magistrate Judge Moreno: "Given their context, [the questions] were designed to help [Schmiedt] assess the situation he faced and clarify LaRoche's earlier statements." Schmiedt knew nothing about the outstanding warrant when he arrived. Even if LaRoche was in custody, follow-up questions to clarify ambiguity do not amount to "interrogation" unless "their point is to enhance the defendant's guilt." United States v. Becerra, 958 F.3d 725, 729 (8th Cir. 2020) (quotation omitted); see United States v. Jackson, 852 F.3d 764, 771-72 (8th Cir. 2017); United States v. Orr, 636 F.3d 944, 954 (8th Cir. 2011). Far from seeking to

expand LaRoche's guilt, the follow-up questions gave LaRoche an opportunity to provide an explanation that might avoid the need for an immediate arrest.

3. Voluntariness. LaRoche argues his statements were involuntary because Officer Moran had previously declined to make a warrant arrest and this "implied promise" that he would not be arrested meant his will was overborne when faced by a uniformed officer who suspected he was under the influence. This contention is without merit. That an officer had given LaRoche an opportunity to resolve the warrant without an arrest was not a promise that would bind a different officer weeks later. Moreover, "a promise made by law enforcement not to arrest or prosecute does not render a confession involuntary." United States v. Thunderhawk, 799 F.3d 1203, 1206 (8th Cir. 2015). Rather, the issue is "whether or not the authorities overbore the defendant's will and critically impaired his capacity for self-determination." LeBrun, 363 F.3d at 725. Here, we agree with Magistrate Judge Moreno and the district court that LaRoche's statements were voluntary.

For these reasons, we conclude the district court did not err in denying LaRoche's motion to suppress. Therefore, we need not consider whether the alleged error was harmless, which is at least arguable because the statements in question "had no bearing on his guilt for the crime" of which he was convicted, his subsequent assault of a federal officer. United States v. Figueroa-Serrano, 971 F.3d 806, 813 (8th Cir. 2020).

**B. Sufficiency of the Evidence.** The district court instructed the jury that to find LaRoche guilty of the physical-contact lesser included offense, it had to find that LaRoche (1) voluntarily and intentionally (2) assaulted, resisted, opposed, impeded, intimidated, or interfered with federal officer Schmiedt and (3) made physical contact with Schmiedt while (4) Schmiedt was employed as a Bureau of Indian Affairs police officer. LaRoche argues there was insufficient evidence to convict him of this offense because there was "no physical evidence of the charged events, nor was there

corroborating evidence of actual physical contact. At best, there was frantic video captured from the taser that showed in at least one frame that LaRoche was close to Officer Schmiedt." We will affirm if, "after viewing the evidence in the light most favorable to the verdict, a reasonable jury could have found the defendant guilty beyond a reasonable doubt." United States v. Wilkins, 25 F.4th 596, 598–99 (8th Cir. 2022) (quotation omitted).

Schmiedt, his treating chiropractor Brooke Schomp, and LaRoche were the witnesses who addressed this issue at trial. Schmiedt testified that after he told LaRoche he would execute the arrest warrant, LaRoche turned and fled into the garage, where there was a backdoor exit. Schmiedt chased LaRoche into the garage, where LaRoche emerged from behind a blanket and ran directly into Schmiedt, knocking him into a wall and table. Schmiedt unsuccessfully tried to tase LaRoche, who escaped through the front door. Dr. Schomp testified to treating Schmiedt for right shoulder, neck, and pelvic pain and injury after the incident. LaRoche, testifying in his defense, testified that he "cut out" and went to the garage because he did not want to be arrested and Schmiedt came into the garage with his laser lights looking for LaRoche. He denied assaulting or having physical contact with Officer Schmiedt. The prosecution introduced a hazy video from the taser camera. It did not establish whether or not there was physical contact.

Lack of physical evidence does not warrant overturning LaRoche's conviction. "Even in the face of inconsistent evidence, a victim's testimony alone can be sufficient to support a guilty verdict." United States v. Seibel, 712 F.3d 1229, 1237 (8th Cir. 2013) (quotation omitted). Schmiedt testified there was painful contact that required medical treatment and time off from work, testimony corroborated by Dr. Schomp. LaRoche argues Schmiedt exaggerated, emphasizing that the jury acquitted him of assault that inflicted bodily injury. But "it is the function of the jury, not an appellate court, to resolve conflicts in testimony or judge the credibility of witnesses." United States v. Hernandez, 569 F.3d 893, 897 (8th Cir. 2009) (quotation omitted).

As in Wilkins, "the jury faced competing accounts of the events" and chose to credit Schmiedt's testimony, which provided sufficient proof of the alleged contact. 25 F.4th at 599-600. "The jury's credibility findings are virtually unreviewable on appeal." United States v. Henderson, 11 F.4th 713, 716 (8th Cir. 2021) (quotation omitted), cert. denied, 142 S. Ct. 1696 (2022). The district court did not err in denying LaRoche's motions for judgment of acquittal.

**C. Rule 404(b) Issues.** Prior to trial, the district court ruled on LaRoche's motion in limine to preclude the government from introducing his prior convictions under Rules 404(b) and 403 of the Federal Rules of Evidence. The court excluded other prior convictions, including an assault that did not involve a federal officer, but ruled that the government may introduce, with a limiting instruction, the fact of four prior convictions for assaulting law enforcement officers -- 2009 and 2019 federal convictions for assaulting, resisting, or otherwise impeding federal officers, and 2011 and 2012 South Dakota convictions for resisting arrest and assault on a law enforcement officer. It appears, the court explained, that "the trial here will be focused on what Mr. LaRoche's intent was and whether it was simply to flee or also to flee in a way that involved physical contact with the officer. And thus, evidence of his intent, absence of mistake, or . . . lack of accident is central here." LaRoche challenges this ruling on appeal.

Rule 404(b) precludes the use of prior crimes to show the defendant's propensity to commit a criminal act. But prior convictions are admissible to prove "intent . . . absence of mistake, or lack of accident" if the evidence is "(1) relevant to a material issue; (2) similar in kind and not overly remote in time to the crime charged; (3) supported by sufficient evidence; and (4) higher in probative value than prejudicial effect." United States v. Bragg, 44 F.4th 1067, 1073-74 (8th Cir. 2022) (citation omitted), cert. denied, 143 S. Ct. 1062 (2023). We review the district court's admission of 404(b) evidence for abuse of discretion, reversing only if prior convictions "clearly had no bearing on the case and were introduced solely to prove

the defendant's propensity to commit criminal acts." United States v. Drew, 9 F.4th 718, 722 (8th Cir. 2021) (quotation omitted), cert. denied, 142 S. Ct. 1159 (2022).

We conclude the district court did not abuse its discretion in admitting the fact of four prior convictions for nearly identical criminal conduct -- assault of a state or federal officer engaged in performing law enforcement responsibilities. "Evidence of past crimes can be probative of a defendant's intent to commit a similar act." United States v. Johnson, 860 F.3d 1133, 1142 (8th Cir. 2017) (quotation omitted). By pleading not guilty, LaRoche required the government to prove every element of the charged crime, including intent.[2] The oldest of the four convictions took place twelve years before the charged conduct, within the time span of prior convictions we have generally allowed. See United States v. Escobar, 909 F.3d 228, 242 (8th Cir. 2018). The district court limited the government to introducing the certificates of conviction, which is sufficient evidence of the conviction, and the court's limiting instruction diminished the danger of unfair prejudice. See United States v. Walker, 470 F.3d 1271, 1275 (8th Cir. 2006). LaRoche argues admitting four convictions was unnecessarily cumulative, but we have upheld "admit[ting] four past convictions for non-propensity reasons when paired with a limiting instruction." Drew, 9 F.4th at 724. We afford the district court "substantial deference" in making this determination. Bragg, 44 F.4th at 1074.

**D. Other Evidentiary Issues.** LaRoche argues that a number of the district court's other evidentiary rulings were prejudicial abuses of discretion -- not sufficiently redacting segments of the dash cam audio where LaRoche made references to his time in prison or criminal history; testimony by Schmiedt that implied LaRoche was under the influence of a stimulant like methamphetamine; the

---

[2]"The mere fact that [LaRoche] did not actively dispute motive or intent did not preclude the government from offering otherwise admissible evidence of these factors." United States v. Walker, 428 F.3d 1165, 1170 (8th Cir. 2005).

government cross-examining LaRoche on his encounter with Officer Moran that led to the outstanding warrant, a subject LaRoche introduced in his opening statement and addressed in his direct examination testimony; and the contention that "Schmiedt repeatedly attempted to exceed or violate the district court's orders and discussions regarding his interactions with LaRoche." The government argues that some of these issues should be subject only to plain error review.

"A district court is accorded wide discretion in determining the admissibility of evidence under the Federal Rules." United States v. Abel, 469 U.S. 45, 54 (1984). We reverse "only when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict." United States v. Espinoza, 684 F.3d 766, 778 (8th Cir. 2012) (quotation omitted). Here, as in Abel, the district court carefully considered arguments of counsel, sustained defense objections or limited testimony in some instances, and made efforts to ensure that probative evidence did not unduly prejudice LaRoche. He argues that these evidentiary rulings were nonetheless unfairly prejudicial under Rule 403 of the Federal Rules of Evidence. "In determining whether evidence should have been excluded under Rule 403, a reviewing court must give great deference to the trial judge who saw and heard the evidence." United States v. Ziesman, 409 F.3d 941, 951 (8th Cir. 2005) (quotation omitted). After careful review of the record, we conclude there was no abuse of the district court's substantial evidentiary discretion.

## II. The Sentencing Issue

The guideline for Obstructing or Impeding Officers offenses, which includes 18 U.S.C. § 111 violations, is Section 2A2.4. One of its Specific Offense Characteristics is a two-level increase in the base offense level "[i]f the victim sustained bodily injury." USSG § 2A2.4(b)(2). "Bodily injury" is defined as "any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." USSG § 1B1.1, comment. (n.1B). On

appeal, LaRoche argues the district court committed procedural error in overruling his objection to this enhancement because no bodily injury occurred. "We review the factual bases of a district court's sentencing enhancements for clear error, and give due deference to the district court's application of the Guidelines to the facts." United States v. Hoelzer, 183 F.3d 880, 882 (8th Cir. 1999). However, our review of the application of the Guidelines is *de novo*. United States v. Brooks-Davis, 984 F.3d 695, 700 (8th Cir. 2021).

At trial, Schmiedt testified he felt pain in his back and lower side upon hitting the wall. The injury slowed him down and made him unable to effectively pursue the fleeing LaRoche. When he completed this shift, his shoulder, neck, and back were still hurting. He did not feel fit for duty the next day and saw a chiropractor, Dr. Schomp, who advised Schmiedt to take a week off work. Dr. Schomp testified she performed orthopedic tests that confirmed pain and injury in Schmiedt's right shoulder, neck and pelvic region. Dr. Schomp treated Schmiedt on four different occasions in the first half of November.

LaRoche argues that the jury, by acquitting him of the greater offense of assaulting, opposing, resisting, impeding, intimidating, or interfering with a federal officer "by inflicting bodily injury," impliedly found Schmiedt not credible in testifying he had an injury, and the district court could not overrule this credibility finding by applying the "sustained bodily injury" sentencing enhancement. We disagree. "[A]n acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." United States v. Ruelas-Carbajal, 933 F.3d 928, 930 (8th Cir. 2019) (quotation omitted).

"[A] victim need not manifest outward signs of injury to sustain bodily injury." Hoelzer, 183 F.3d at 882. Here, the district court did not clearly err in finding by a preponderance of the evidence that Schmiedt suffered bodily injury. Both Schmiedt

and Dr. Schomp testified the injury that resulted when LaRoche pushed Schmiedt into a wall was painful, drove Schmiedt to see a chiropractor who confirmed the pain and injury, and prompted Schmiedt to take a week off work. We have upheld a finding of sustained bodily injury on less compelling evidence. See United States v. Steele, 550 F.3d 693, 704 (8th Cir. 2008) (scratches near eye that prompted officer to seek medical attention). Though LaRoche points to contrary evidence, such as Schmiedt participating in a four-hour pheasant hunt while off work, it does not convince us the district court erred, much less clearly erred. The credibility of Schmiedt and Dr. Schomp were for the trial court to determine. See United States v. Buford, 42 F.4th 872, 876-77 (8th Cir. 2022).

LaRoche further argues that applying the two-level increase violated his Fifth and Sixth Amendment rights in light of the jury's acquittal of the inflicting bodily injury charge. This argument is foreclosed by our controlling precedents. See, e.g., United States v. Sanchez, 42 F.4th 970, 976 (8th Cir. 2022), cert. denied, 143 S. Ct. 2691 (2023).

The judgment of the district court is affirmed.

_____

-11-