# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1987
_____

United States of America

*Plaintiff - Appellee*

v.

Louis Andrew Rabbitt, Jr.

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota - Central
_____

Submitted: June 9, 2025
Filed: July 9, 2025
_____

Before COLLOTON, Chief Judge, ARNOLD and GRUENDER, Circuit Judges.
_____

ARNOLD, Circuit Judge.

A jury found Louis Rabbitt guilty of failing to register as a sex offender, *see* 18 U.S.C. § 2250(a); assaulting, resisting, or impeding a federal officer with a deadly or dangerous weapon, *see id.* § 111(a), (b); and committing a crime of violence while

failing to register as a sex offender, *see id.* § 2250(d). After the district court[1] sentenced him to 77 months in prison, he appealed to our court, maintaining that the evidence was insufficient to convict him of any of these charges. We affirm.

During the early summer of 2023, Rabbitt began a term of supervised release following a conviction for failing to register as a sex offender. His probation officer, Derek Seeley, testified at trial that he met with Rabbitt a few times over the course of a month, including at the address Rabbitt listed as his residence on the sex-offender registry. According to Seeley, Rabbitt then missed a scheduled meeting, and when Seeley visited Rabbitt's home, Rabbitt wasn't there. Seeley said that he spoke with Rabbitt on the phone less than two weeks later, and Rabbitt informed him that "he was struggling with his living arrangements." Seeley testified that he eventually lost contact with Rabbitt, and so the district court issued a warrant for Rabbitt's arrest.

Deputy U.S. Marshal Brian Graves testified about his efforts to find Rabbitt over the next month and a half. He related that deputy marshals knocked on the door of Rabbitt's registered address one day and, when no one answered, they "breached the door" and went inside, finding no one. When they returned about a month later, Graves said, the apartment was boarded up, and Rabbitt's whereabouts were still unknown.

Later that day, deputy marshals found Rabbitt in a parked car outside a residence. Five of them testified about what happened next. The deputy marshals ordered Rabbitt to get out of the car, and Rabbitt did so while holding a metal baseball bat. After motioning with the bat, Rabbitt fled, and the deputy marshals gave chase. At one point Rabbitt stopped and faced two of them with bat in hand, and then

---

[1]The Honorable Roberto A. Lange, Chief Judge, United States District Court for the District of South Dakota.

he took off again, dropping the bat along the way. The deputy marshals eventually captured and subdued him after a struggle.

At trial Rabbitt moved for a judgment of acquittal, arguing that the evidence against him was insufficient to support a conviction. The district court denied the motion. We review the district court's decision de novo, considering the evidence in a light most favorable to the verdict. *See United States v. Keck*, 2 F.4th 1085, 1090 (8th Cir. 2021).

With respect to his conviction for knowingly failing to register as a sex offender, *see* 18 U.S.C. § 2250(a), Rabbitt protests that he attempted to register on two different days in July but was turned away and told to return another time. For one thing, though, the evidence at trial about the number of times Rabbitt visited the registration office that month is less than crystalline, and we believe a reasonable jury could find from it that Rabbitt attempted to register only once. Regardless, though, a reasonable jury could also determine that Rabbitt was attempting merely to fulfill his biannual obligation to re-register as a sex offender. *See* S.D. Codified Laws § 22-24B-7. But as the district court instructed the jury, Rabbitt also had an obligation to update the registry no later than three business days after he changed his residence, *see* 34 U.S.C. § 20913(c), and Rabbitt didn't do that or attempt to do that for months even though there was ample evidence that he no longer lived at the apartment he listed on the registry.

Rabbitt says that, even though Seeley and the deputy marshals failed to make contact with him at the listed residence several times over the course of a few months, it doesn't necessarily follow that he had moved out of the apartment. After all, he argues, he wasn't required to be at the apartment at all times. A reasonable jury could conclude, however, that Rabbitt had indeed moved out. Rabbitt's ex-girlfriend and his sister (both of whom lived at the same apartment) testified that Rabbitt had moved out by the middle of July. And according to Graves, the apartment was boarded up

when he visited it in September. On this record, the jury was not obligated to believe he still lived there.

In his next effort to challenge this conviction, Rabbitt states that, even if he did move out of the apartment in the middle of July, the evidence doesn't show that he had any "residence" after that, with "residence" being defined as set forth in the jury instructions as "the location of the defendant's home or other place where the defendant habitually lives." *See also* 34 U.S.C. § 20911(13). Once again, though, we think the jury could reasonably disagree with Rabbitt, as his ex-girlfriend testified that after she and Rabbitt moved out of the apartment, they lived together for about two weeks in a trailer belonging to one of Rabbitt's friends.

Our opinion in *United States v. Voice*, 622 F.3d 870 (8th Cir. 2010), is instructive. There, a sex offender absconded from a halfway house that he listed as his residence on the sex-offender registry. There was evidence at his trial that after he left the halfway house he lived for about ten days in someone's home and then in an abandoned comfort station. We rejected his contention that he hadn't changed residences. *See id.* at 873–75. We agreed with a case that had "affirmed a jury instruction that an updated registration is required if a sex offender leaves his registered residence with no intent to return." *See Voice*, 622 F.3d at 875 n.2 (citing *United States v. Van Buren*, 599 F.3d 170, 172–75 (2d Cir. 2010)). Moving from a listed residence to anywhere else, whether a singular location or several, is a "change" of residence, as the offender can no longer be expected to be found at the place listed in the sex-offender registry. We also found it significant that the defendant stayed ten days at someone's home. *See Voice*, 622 F.3d at 874–75. Here, similarly, a reasonable jury could conclude that Rabbitt lived for two weeks in his friend's trailer, which his ex-girlfriend explained was located in the "trailer courts" across from a grocery store. If Voice should have listed the address of the home where he stayed for ten days, then surely Rabbitt should've listed the address or other identifying information for the trailer where he resided for two weeks.

-4-

Rabbitt finally says that even if he failed to update his registration as required, he didn't do so "knowingly" as the statute requires because he didn't realize he had changed residences and triggered the obligation to provide an update. *Voice* resolves this contention as well, as we rejected the defendant's nearly identical argument that he didn't know that he had changed residences when he left the halfway house. *See id.* at 875–76. We explained that a sex offender can, within the meaning of the statute, knowingly fail to update his registration even when he doesn't know that his failure is unlawful. *See id.* at 876. Likewise here, the government didn't have to show that Rabbitt knew his failure to register was unlawful.

In sum, sufficient evidence supports Rabbitt's conviction for failing to register as a sex offender, and the district court did not err in denying Rabbitt's motion for judgment of acquittal.

We turn now to Rabbitt's conviction under 18 U.S.C. § 111. That statute provides that whoever uses a deadly or dangerous weapon and "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with" a deputy marshal while he is engaged in his official duties is guilty of a crime. A conviction under § 111 does not require that the defendant make physical contact with the officer; "[a]ll that is required is such a threat or display of physical aggression toward the officer as to inspire fear of pain, bodily harm, or death." *See United States v. Wilkins*, 25 F.4th 596, 599 (8th Cir. 2022). To determine whether the requisite degree of force was displayed, we consider whether the defendant's actions "would reasonably have inspired fear in a reasonable person." *See id.*

Rabbitt maintains that he didn't forcibly assault, resist, or impede the deputy marshals but simply "did one thing: he ran away while holding a bat in his hand." And, he continues, though he stopped at one point during his flight and turned toward two deputy marshals, "he was three to four yards away and . . . did not swing the bat."

-5-

He also suggests that if he did use the bat in an apparently threatening manner, there was no evidence that he did so intentionally as opposed to accidentally. *See id.*

Considering the evidence in a light most favorable to the verdict, we disagree with Rabbitt's contentions. The deputy marshals consistently testified that Rabbitt didn't immediately get out of the car where officers found him despite their several commands. One of the deputy marshals said that, after he got out of the car and stood there with the bat, Rabbitt didn't obey orders to drop the bat but instead made motions indicating he was "loosening up" and getting "[r]eady to go." Another deputy marshal described Rabbitt as taking "an aggressive stance" with the bat. Then when Rabbitt fled, the two deputy marshals hot on Rabbitt's heels explained what happened when Rabbitt stopped momentarily and faced them. One testified that Rabbitt continued to refuse orders to drop the bat and stood "as if he was either going to run at us or he was going to continue his flight," which he described as a "[v]ery dangerous" situation. The other testified that Rabbitt turned around "with the bat in the air, like he was getting ready to swing at us," or in other words, "like he was getting ready to swing a[n] ax to come down on somebody." Both deputy marshals demonstrated for the jury how Rabbitt stood with the bat and testified that Rabbitt's actions led them to draw their guns. It is manifest that a reasonable jury could conclude on this record that Rabbitt used the bat to make "such a threat or display of physical aggression toward the officer[s] as to inspire fear of pain, bodily harm, or death," *see Wilkins*, 25 F.4th at 599, and that he did so intentionally and not accidentally.

Finally, Rabbitt challenges his conviction for committing a crime of violence while failing to register as a sex offender. *See* 18 U.S.C. § 2250(d). He argues that, since the evidence was insufficient to support his convictions under § 111 or § 2250(a), then it's necessarily insufficient to support a conviction under § 2250(d). But for the reasons we just explained, the evidence was sufficient to support those convictions, and so his challenge to his conviction under § 2250(d) fails too.

Affirmed.

_____