[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-11226

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 3, 2009
THOMAS K. KAHN
CLERK

D.C. Docket No. 05-00311-CR-12-ODE-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICARDO WILSON,
a.k.a. Reek,
a.k.a. Rico Wilson,
GEORGE RICHARDSON,
a.k.a. Easy,
PROSPER SENYO KUDZO COKER-OFORI,
a.k.a. Senyo,
ANDREW E. JONAH,
a.k.a. Rain,
a.k.a. Busy,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(February 3, 2009)

Before TJOFLAT and CARNES, Circuit Judges, and HOOD,[*] District Judge.

PER CURIAM:

Andrew Jonah, Prosper Coker-Ofori, George Richardson, and Ricardo Wilson (collectively, "Defendants") were convicted of various drug, firearm, and money laundering offenses. Each defendant appealed his conviction on several grounds. Defendant Prosper Coker-Ofori also appeals his sentence. After a thorough review of the record and having had the benefit of oral argument, we **AFFIRM.**

## I. BACKGROUND

On October 3, 2006, a grand jury in the Northern District of Georgia returned a 16-count superceding indictment against eight defendants, including the four Defendants involved in this appeal. Count One charged all eight defendants with conspiring to possess with the intent to distribute heroin, cocaine, and ecstasy, in violation of 21 U.S.C. § 846. The remaining counts charged individual defendants with possessing and distributing narcotics, possessing firearms during and in relation to the drug offenses, and money laundering in relation to the drug offenses.

Following a 12-day jury trial, the district court granted Jonah's motion for

---

[*] Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

judgment of acquittal on the money laundering charged in Counts Fifteen and Sixteen. All defendants were found guilty of the conspiracy charged in Count One. Additionally, the jury found Jonah guilty of distributing and possessing with the intent to distribute heroin, attempting to possess with the intent to distribute cocaine, conspiring to import heroin, wiring money in furtherance of drug trafficking, and possessing ecstasy with the intent to distribute. Jonah was acquitted of possessing ecstasy with the intent to distribute and possession of a firearm in furtherance of same. Richardson was acquitted of possessing ecstasy with the intent to distribute and possession of a firearm. In addition to Count One, Wilson was found guilty of attempting to possess with the intent to distribute at least five kilograms of cocaine and being an unlawful user of a controlled substance in possession of a firearm. Defendants filed timely notices of appeal. Defendants appeal their convictions on numerous grounds. Only Coker-Ofori appeals his sentence. Due to the lengthy nature of the facts surrounding this case, the facts pertinent to this appeal are discussed below as they relate to the various issues on appeal.

## II. DISCUSSION

### A.     Wiretap orders

Jonah complains that the fruits of the wiretap orders granted in this case

should have been suppressed because the affidavits in support of the wiretap orders did not demonstrate the necessity of the wiretaps. In the course of its investigation from September 2004, until the arrests in August 2005, the Government applied for and was granted thirteen wiretap orders. Claiming that the case agent's affidavit in support of the wiretap warrant contained a material misstatement, Jonah moved for an evidentiary hearing pursuant to *Franks v. Delaware,* 438 U.S. 154 (1978). No evidentiary hearing was held. After reviewing the magistrate judge's report and recommendation to deny the motions to suppress the wiretap evidence and Jonah's objections to same, the district court denied the motions to suppress the wiretap evidence.

Pursuant to 18 U.S.C. § 2518, court-ordered electronic surveillance is prohibited unless the government demonstrates the necessity of such techniques. *See United States v. Carrazana,* 921 F.2d 1557 (11th Cir. 1991). A judge may authorize a wiretap based upon facts submitted by the applicant that ordinary "investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). Citing information learned through other investigative techniques, Jonah argues that the Government failed to prove the necessity of the wiretaps. The Government is not required to show that all other investigative methods have been wholly

4

unsuccessful.  *United States v. Alonso*, 740 F.2d 862, 868 (11th Cir. 1984).

The district court's determination that the Government's application established the requisite necessity is subject to review for clear error.  *United States v. Weber*, 808 F.2d 1422, 1424 (11th Cir. 1987).  The Government admits that as of July 2004, prior to its application for the wiretap order, the confidential informant ("CI") had enabled the Government to "build a solid case against Jonah and [co-defendant] Amoo-Adare."  The DEA's use of traditional investigative techniques had not, however, enabled it to obtain information regarding Jonah's drug suppliers, transportation methods, down-line distributors, and financial resources.  The Government sought the wiretap orders in an attempt to obtain such information.  While Jonah argues that such information could have been obtained using traditional surveillance techniques or the CI, the Government found these methods unsuccessful due to Jonah's use of counter-surveillance and the CI's inability to continue in the investigation.[1]

The judge to whom the wiretap application is made is clothed with broad discretion in considering the application, *Alonso*, 740 F.2d at 868-69.  In the instant case, the district court did not clearly err in granting the wiretap application.

---

[1]  At the time of his cooperation with the Government, the CI was on parole in the State of Georgia.  Upon learning of the CI's continued cocaine use, the parole board revoked its permission for the CI to participate in the DEA's investigation.

**B.** *Franks* **hearing**

Jonah argues that the district court erred in denying his request for an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), regarding the affidavits submitted in support of the wiretap orders. While this Court has not articulated the precise standard of review of a district court's denial of a *Franks* hearing, normally a district court's decision regarding the need for an evidentiary hearing is reviewed for abuse of discretion. *United States v. Arbolaez*, 450 F.3d 1283, 1293 (11th Cir. 2006). We shall apply that standard here.

"[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks v. Delaware*, 438 U.S. 154, 155-56, (1978). The Eleventh Circuit applies the *Franks* analysis in evaluating an affidavit offered in support of a wiretap order. *See United States v. Novaton*, 271 F.3d 968, 986 (11th Cir. 2001).

The allegedly false statement relied upon by Jonah is DEA Special Agent Julio Alba's failure to include in his affidavit the fact that "a very significant contact between Jonah and [the CI] . . . occurred on September 8, 2004." Offering

6

no support for his contention, Jonah argues that "[t]his information would have been crucial to a judge's determination as to whether the investigation could proceed with [the CI] and without wiretap surveillance." *Id.* The omission of this allegedly material fact is insufficient to conclude that the district court abused its discretion in determining that Jonah had not made a substantial preliminary showing that a false statement was contained in the affidavit and declining to conduct a *Franks* hearing.

## C. *Batson* challenge

For the first time on appeal, Jonah argues that the district court erred in rejecting co-defendant Richardson's *Batson* challenge to the Government's use of its peremptory strikes. Richardson challenged the Government's use of peremptory challenges to eliminate three African-American women from the jury venire, and to eliminate another African-American woman as an alternate juror. This Court "consider[s] objections raised for the first time on appeal under the plain error standard." *United States v. Mangaroo*, 504 F.3d 1350, 1353 (11th Cir. 2007) (citing *United States v. Neely*, 979 F.2d 1522, 1523 (11th Cir. 1992)).

In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court outlined a three-part test to evaluate the validity of challenges to peremptory strikes. First, a moving party must make a *prima facie* showing that a peremptory challenge has

7

been exercised on the basis of race or gender. To do so, the defendant must show that he is as member of a cognizable racial group, and that the prosecutor exercised peremptory challenges in such a way so as to remove from the venire members of the defendant's race. Once the defendant makes a *prima facie* showing, the burden shifts to the prosecutor to offer a race-neutral basis for striking the juror in question. Finally, in light of both parties' submissions, the trial court must determine whether the moving party has shown purposeful discrimination. The trial court's determination is pure fact-finding and will be reversed only if it is clearly erroneous. *Id.* at 98.

Upon considering Richardson's *Batson* challenge, the trial court found that the Government offered valid, race-neutral reasons for using its peremptory challenges on four African-American women and overruled Richardson's *Batson* challenge. Specifically, the trial court stated: "I do not believe that any of the reasons are pretextual. In other words, that any of the reasons are a pretext for race."

The Government's stated reasons for striking the various jurors are as follows:

Juror No. 8 - She was very assertive in responding to questions from the Government, and it felt she could hang a jury if she disagreed with the decision-making of other jurors; both she and the cooperating defendant in this case, who

8

|                 | supplied phones to Jonah's drug organization, had worked for Nextel, and the Government feared she would be biased against the cooperating defendant |
| --------------- | --- |
| Juror No. 18 -  | She had been involved in prison ministry work and the Government believed she may be sympathetic to the defendants |
| Juror No. 23 -  | She stated she would have a difficult time passing judgment on another person |
| Juror No. 31 -  | Her history of holding jobs for only short periods of time indicated that she may have trouble working with a group or dealing with conflict; and she was very vague about her reasons for leaving her employment as a corrections officer |

The record does not indicate, and in fact Jonah conceded during oral argument, that there is no evidence in the record of any white or male jurors with similar characteristics who were not stricken from the jury panel.

"Under *Batson*, almost any plausible reason can satisfy the striking party's burden, as long as the reason is race or gender neutral." *United States v. Walker*, 490 F.3d 1282, 1293 (11th Cir. 2007). As the fact-finder for the purposes of a *Batson* challenge, "the trial judge is in the best position to evaluate an attorney's candor and ferret out purposeful discrimination." *Id.* at 1294. Given the deference afforded to the trial judge's determination regarding the legitimacy of the Government's race-neutral explanations for its strikes, and the lack of any record evidence demonstrating that similarly situated white male jurors were not stricken, Jonah has failed to show that the denial of co-defendant Richardson's *Batson*

9

challenge rises to the level of plain error.

## D. Sufficiency of the evidence

Defendants Coker-Ofori, Richardson, and Wilson argue that the evidence was insufficient for the jury to find them guilty of the conspiracy charged in Count One.[2] When reviewing the sufficiency of the evidence, this Court's review is de novo, but "all reasonable inferences and credibility evaluations" must be resolved in favor of the jury's verdict. *United States v. Medina*, 485 F.3d 1291, 1296 (11th Cir. 2007). This Court "will reverse a conviction based on insufficient evidence only if no reasonable trier of fact could have found guilt beyond a reasonable doubt." *Walker*, 490 F.3d at 1296.

To support a conviction for conspiracy, the evidence must show, beyond a reasonable doubt, that: 1) a conspiracy existed; 2) each defendant knew of the essential objectives of the conspiracy; and 3) each defendant knowingly and voluntarily participated in the conspiracy. *United States v. Thompson*, 422 F.3d 1285, 1290 (11th Cir. 2005). The following is simply a portion of the evidence which was adduced at trial.

---

[2] Although Jonah attempted to assert an insufficiency of the evidence argument by simply adopting the arguments of his co-defendants in his brief, this Court does not consider insufficiency arguments raised only by adoption. *See United States v. Khoury*, 901 F.2d 948, 963 n.13 (11th Cir. 1990) (noting that "the fact-specific nature of an insufficiency claim requires independent briefing if we are to reach the merits").

**Coker-Ofori**

1) Relayed messages and transported heroin to and from the New York-based heroin supplier known as Solo

2) Laryea directed Solo to pay Coker-Ofori for connecting them

3) Numerous references to "we" and "our" in phone calls between Solo and Coker-Ofori, indicating a shared objective or activity

4) Solo instructed Laryea to contact Coker-Ofori when he needed heroin from Solo

5) On March 6, 2005, Laryea and Coker-Ofori spoke seven times regarding the need to replace heroin that was seized at the airport

6) In a March 25, 2006 phone call, Laryea told Coker-Ofori that "your share of the money is huge," and that "you are the only one, the only one who is controlling our affairs."

7) In an April 2, 2005 phone call, Solo and Coker-Ofori discussed meeting to exchange heroin

8) Solo asked Coker-Ofori to drive to Atlanta to deliver heroin to Jonah

9) After their arrests, Laryea and Coker-Ofori agreed that their cover story would be that the transactions concerned Coker-Ofori's business, not heroin

**Richardson**

1) Incorporated the business, Panther, to act as a front for drug trafficking

2) Laryea testified that on July 12, 2004, he met Jonah, Amoo-Adare, and Richardson in New York City where Jonah introduced Richardson as "part of his crew"

3) Before the September 21, 2004 sale of heroin to undercover agents, Amoo-Adare told the CI that Jonah didn't have an entire kilogram to sell because Richardson, a..k.a. "EZ", had gotten 100 grams

4) Jonah's girlfriend, Angela Glass, testified that Jonah told her that Richardson was in her basement, a place where Jonah's "crew" would package drugs

5) On September 30, 2004, $1,500 was wired from Panther's bank account to Laryea's account to pay the plane fare for a heroin courier to travel from Ghana to the United States

6) Jonah financed a vacation weekend in Miami for members of his "crew,"including Richardson

7) Drug ledgers seized from Jonah's residence reflected that ecstasy pills had been distributed to "EZ" and that money had been received from "EZ"

8) Shortly after Jonah's arrest, Richardson arrived at Jonah's residence

**Wilson**

12

1) Telephone conversations with Jonah in September 2004 reference a trip to California to recover six kilograms of cocaine

2) Wilson's name appears numerous times in the drug ledgers seized from Jonah's residence

While not an exhaustive recitation of the evidence presented at trial, resolving all reasonable inferences and credibility evaluations in favor of the jury's verdict, *Medina*, 485 F.3d at 1296, the above-listed evidence is more than sufficient to prove beyond a reasonable doubt that a conspiracy existed, that each defendant knew of the essential objectives of the conspiracy, and that each defendant knowingly and voluntarily participated in the conspiracy, *Thompson,* 422 F.3d at 1290. Defendants' arguments that the evidence was insufficient to support their convictions fail.

## E.     Single conspiracy

Defendants Richardson, Wilson, and Coker-Ofori argue that because the indictment charged only a single conspiracy but the evidence presented at trial established multiple conspiracies, their convictions on the conspiracy charged in Count One of the indictment must be overturned.[3] This Court does not "reverse

---

[3] While only defendant Richardson presented legal and factual analysis of this issue in his brief, in their briefs, defendants Wilson and Coker-Ofori adopted Richardson's argument as their own, pursuant to FRAP 28(i).

13

convictions because a single conspiracy is charged in the indictment while multiple conspiracies may have been revealed at trial unless the variance is material and substantially prejudiced the defendants." *United States v. Alred*, 144 F.3d 1405, 1414 (11th Cir. 1998).

> Because the jury determines the question of fact as to whether the evidence establishes a single conspiracy, the arguable existence of multiple conspiracies does not constitute a material variance from the indictment if, viewing the evidence in the light most favorable to the government, a reasonable trier of fact could have found that a single conspiracy existed beyond a reasonable doubt. Accordingly, we will not disturb the determination of the jury that a single conspiracy exists if supported by substantial evidence. To decide whether the jury could have found a single conspiracy, we review (1) whether a common goal existed; (2) the nature of the underlying scheme; and (3) the overlap of participants.

*Id.* (internal citations omitted).

In determining whether one or multiple conspiracies exist, "there is no requirement that each conspirator participated in every transaction, knew the other conspirators, or knew the details of each venture making up the conspiracy." *United States v. Taylor*, 17 F.3d 333, 337 (11th Cir. 1994). Importantly, for the purposes of this action, "a single conspiracy may be found where there is a 'key man' who directs the illegal activities, while various combinations of other people exert individual efforts towards the common goal." *Id.*

Viewing the evidence in a light most favorable to the Government, a

14

reasonable jury could have found, and in fact did find, that a single conspiracy existed. The evidence presented at trial showed that Jonah acted as the hub of this drug conspiracy, directing and financing various endeavors to obtain and distribute heroin, cocaine, and ecstasy. While every co-defendant was not involved in every transaction, they would, on occasion, work in concert with one another, and their actions furthered the conspiracy headed by Jonah. Richardson, Wilson, and Coker-Ofori argue, unsuccessfully, that differing methods of obtaining and distributing the heroin, cocaine, and ecstasy lead to the conclusion that there was not a single conspiracy. Defendants' variance argument is without merit.

## F.     Richardson's conviction on the conspiracy charge

The jury found Richardson not guilty of possessing ecstasy with the intent to distribute, but found him guilty of conspiring to distribute. Citing *United States v. Ohayon*, 483 F.3d 1281 (11th Cir. 2007), Richardson argues for the first time on appeal that his acquittal on the charge of possessing ecstasy with the intent to distribute is irreconcilable with the guilty verdict on the conspiracy charge and that the guilty verdict must be set aside.

The issue in *Ohayon* was "whether an acquittal on a charge of an attempted drug offense requires, under the Double Jeopardy Clause of the Fifth Amendment, the dismissal of a charge of a drug conspiracy on which the jury was unable to

15

reach a verdict." *Id.* at 1282. Ohayon was charged with attempt to possess ecstasy with the intent to distribute and conspiracy to possess ecstasy with the intent to distribute. *Id.* A jury acquitted Ohayon of the attempt charge, but could not reach a verdict on the conspiracy charge. *Id.* When the United States sought to retry Ohayon on the conspiracy charge, the district court determined that because the same evidence was offered to support both charges, Ohayon's acquittal on the attempt charge collaterally estopped the United States from retrying him on the conspiracy charge.

*Ohayon* is inapposite to the case at bar. In the instant case, the ecstasy which formed the basis of the charges against Richardson was discovered during an inventory at a storage facility several hours after Jonah was arrested and the car he and Richardson were riding in at the time of the arrest was towed. Based upon these facts, the jury found reasonable doubt that Richardson possessed the ecstasy with the intent to distribute; however, the additional evidence of drug ledgers indicated distribution of ecstasy pills to "EZ," Richardson's nickname, supports the jury's finding that Richardson conspired to distribute the drugs.

"Conspiracy and the substantive offense that is the object of the conspiracy are separate and distinct crimes." *United States v. Hernandez*, 141 F.3d 1042, 1052 (11th Cir. 1998). The jury's determination that Richardson was not guilty of

16

possession but was in fact guilty of conspiracy to possess will not be disturbed.

## G. Entrapment defense

Jonah contends that the district court erred in denying his request to instruct the jury on an entrapment defense. It is Jonah's position that "[t]he heroin crimes charged in the indictment were the product of [the CI] inducing [Jonah] to become involved in the drug trade." "The determination of whether a sufficient evidentiary foundation exists in the record which could support a jury's acceptance of an entrapment defense is properly a question for the trial judge, the standard of review being abuse of discretion." *United States v. Alston*, 895 F.2d 1362, 1369 (11th Cir. 1990) (internal citations omitted).

An affirmative defense of entrapment consists of two elements: 1) government inducement of the crime; and 2) lack of predisposition of the part of the defendant to commit the crime. *United States v. Ryan*, 289 F.3d 1339, 1343 (11th Cir. 2002). "In laying an evidentiary foundation for entrapment, the defendant bears the initial burden of production as to government inducement; once the defendant meets this burden, the burden shifts to the government to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime." *Id.*

"[E]vidence of the government's mere suggestion of a crime or initiation of

17

contact is not enough" to satisfy the defendant's burden to show government inducement of the crime. *Id.* at 1344. To meet his burden of showing government inducement, Jonah must demonstrate that the government persuaded or mildly coerced him to commit the crime. *Id.* "Persuasion or mild coercion may be shown if defendant demonstrat[es] that he had not favorably received the government plan, and the government had to 'push it' on him, or that several attempts at setting up an illicit deal had failed and on at least one occasion he had directly refused to participate." The evidence must be viewed in the light most favorable to the defendant. *Id.* (internal citations omitted). "If the defendant meets his initial burden . . . the question of entrapment becomes a factual one for the jury to decide." *Id.*

After hearing the evidence, the trial judge denied Jonah's request for an entrapment instruction, stating:

> The thing that bothers me the most about your request for an entrapment instruction is what seems to me to be the absence of any evidence in the record of inducement or persuasion.
>  . . .
> I think there is some evidence like you say that could be construed to say that Mr. Jonah was not real experienced in dealing with heroin, but that's different from persuasion. I mean you could have a person who doesn't have any prior dealings who wants to do the deal and says look, just tell me what I need to do and they're told what they need to do and they do it and there's no real persuasion involved.
>  . . .
> [T]here is no evidence from anyone suggesting that there was any

18

pressure put on Mr. Jonah to make those [drug] sales. Obviously, Mr. Jonah did not get the heroin from [the CI]. He got it from Mr. Laryea and [the CI], insofar as the record reflects, had nothing to do with that . . .

There is a wealth of evidence which contradicts Jonah's assertion that the Government induced Jonah to commit the crimes. Jonah began talking with his heroin supplier in the Summer of 2003, prior the CI's agreement to assist the DEA in the Spring of 2004. Jonah was able to procure heroin without any direction from the CI and in fact bought heroin from individuals who were not cooperating with the DEA. Jonah supervised and financed underlings Wilson and Amoo-Adare, who flew to California to obtain six kilograms of cocaine and $1,000,000, without any Government involvement. Angela Glass testified that Jonah was involved in drug trafficking prior to the CI cooperating with the DEA.

Ample evidence refuted Jonah's contention that the Government persuaded or coerced him into drug trafficking. The trial judge did not abuse his discretion in refusing to give an entrapment instruction.

## H.    Coker-Ofori's sentence

Coker-Ofori appeals his 120-month sentence, imposed after a jury found him guilty of conspiring to possess with the intent to distribute at least one gram of heroin and at least five kilograms of cocaine, in violation of 21 U.S.C. § 846. Because Coker-Ofori's guideline range was less than the mandatory minimum term

19

of ten years of imprisonment, Coker-Ofori was sentenced to the mandatory minimum term of 120 months. *See* 21 U.S.C. § 841(b)(1)(A)(i). On appeal, Coker-Ofori argues that the district court clearly erred in holding him accountable for two kilograms of heroin.

A district court's determination of the amount of drugs for which a defendant can be held accountable at sentencing is reviewed for clear error. *United States v. Lee*, 68 F.3d 1267, 1274 (11th Cir. 1995). "When a defendant objects to a factual finding that is used in calculating his guideline sentence, such as drug amount, the government bears the burden of establishing the disputed fact by a preponderance of the evidence." *United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir. 2005).

"For sentencing purposes a member of a drug conspiracy is liable for his own acts and the acts of others in furtherance of the activity that the defendant agreed to undertake and that are reasonably foreseeable in connection with that activity." *United States v. Ismond*, 993 F.2d 1498, 1499 (11th Cir. 1993).

> [T]o determine a defendant's liability for the acts of others, the district court must first make individualized findings concerning the scope of criminal activity undertaken by a particular defendant. Once the extent of a defendant's participation in the conspiracy is established, the court can determine the drug quantities reasonably foreseeable in connection with that level of participation. If the court does not make individualized findings, the sentence may nevertheless be upheld if the record supports the amount of drugs attributed to a defendant.

20

*Id.* (internal citations omitted).

The district court must take into account all "relevant conduct" when determining the quantity of drugs attributable to the defendant, including "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant[.]" U.S.S.G. § 1B1.3(a)(1)(A).  If the case involves drugs, "the defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." U.S.S.G. § 1B1.3, comment. (n.2); *see also* U.S.S.G. § 1B1.3(a)(1)(B).  "In an offense involving an agreement to sell a controlled substance, the agreed-upon quantity of the controlled substance shall be used to determine the offense level . . ." U.S.S.G. § 2D1.1, comment. (n.12).

The record supports the district court's finding that Coker-Ofori could have reasonably foreseen that the drug transaction would involve two kilograms of heroin.  In March 2005, Laryea contacted Coker-Ofori, Solo's intermediary, in order to purchase heroin from Solo.  In recorded telephone conversations, Laryea told Coker-Ofori that his share of the money would be "huge," and that "a big load is coming."  The telephone conversations eventually led to a three-way agreement

21

by which Solo would provide two kilograms of heroin to Laryea for Jonah. The evidence of record establishes, by a preponderance of the evidence, that Coker-Ofori facilitated the two-kilogram heroin deal by connecting Laryea and Solo and that Coker-Ofori knew that the "big load" would provide him a "huge" share of the money.

Because of Coker-Ofori's role in facilitating an agreement to purchase two kilograms of heroin, his relationship with the heroin dealer, and the evidence showing that he was aware the deal was to involve a large amount of heroin, the district court did not clearly err at sentencing in finding that he was responsible for two kilograms of heroin. Accordingly, we affirm as to this issue.

**AFFIRMED.**