# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1303

_____

United States of America

*Plaintiff - Appellee*

v.

Jeremy Young

*Defendant - Appellant*

_____

No. 24-1311

_____

United States of America

*Plaintiff - Appellee*

v.

Jeremy Young

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Central

_____

Submitted: October 22, 2024
Filed: February 20, 2025

_____

Before SHEPHERD, KELLY, and STRAS, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Jeremy Young was convicted by a jury of possessing an unregistered firearm, in violation of 26 U.S.C. §§ 5841, 5845(a), 5861(d), 5871, and 5872, and being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8), and 924(d). Young was subsequently convicted by a separate jury of assaulting a federal officer in violation of 18 U.S.C. § 111(a). He received a total sentence of 84 months' imprisonment and 3 years of supervised release. Young now appeals, challenging the Government's use of peremptory strikes against Native American venirepersons under Batson v. Kentucky, 476 U.S. 79 (1986); the district court's[1] decision to admit certain evidence as *res gestae*; and the sufficiency of the evidence at both trials. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

On May 4, 2022, Special Agent Richard Kumley, a law enforcement officer employed by the Rosebud Sioux Tribe, was on patrol when he observed a black Dodge Durango speeding on the highway. He followed the vehicle and witnessed a foreign object thrown from the passenger-side window before turning onto Old Ring Thunder Road. The vehicle then accelerated to high speeds, and Agent Kumley initiated a traffic stop. The vehicle in question was driven by Defendant Jeremy Young, a Native American, who was driving with his cousin, Dayton Plumman, in the passenger seat.

Agent Kumley proceeded to search the vehicle with Young's consent. He found no contraband and released Young after giving him a verbal warning for speeding. Agent Kumley then returned to the intersection where he saw the object

_____

[1]The Honorable Roberto A. Lange, Chief Judge, United States District Court for the District of South Dakota.

thrown from Young's vehicle and located a Winchester Model 1300 12-gauge shotgun with a partially sawed off barrel. Shortly after discovering the shotgun, Young and Plumman returned to the scene and were both arrested: Young for felony possession of a weapon, as Agent Kumley was aware of Young's criminal history, and Plumman for possessing the modified weapon.

The following day, Young requested and participated in a recorded interview with Agent Kumley after waiving his Miranda[2] rights. During this interview, Young denied knowing that the shotgun was in his vehicle, claiming that Plumman had concealed it up his sleeve until just before he threw it out the window. Young, however, made several inconsistent statements throughout the interview: he admitted that he saw the shotgun a few days before his arrest when Plumman brought it to their shared residence and that he commanded Plumman to "throw [the gun] out the window" despite allegedly not knowing the weapon was in the vehicle. Agent Kumley asked if he had been "playing with [the gun] and everything" when Plumman first brought it home, and Young responded affirmatively, stating that he "touched that shit" and "checked it out or whatever." Finally, Young revealed that he and Plumman were planning to drive to Sioux Falls to pick up two pounds of methamphetamine had they not been arrested.

Young was indicted on March 14, 2023, on one count of possessing an unregistered firearm and one count of being a felon in possession. He pled not guilty, and trial commenced on October 30, 2023. During voir dire, the defense struck eleven potential jurors and the Government struck seven. Of the seven struck by the Government, three were Native American. Young challenged the Government's exercise of its peremptory strikes with respect to the Native American jurors, Jurors 2, 6, and 17, alleging a violation of the Due Process Clause of the Fifth Amendment under Batson, 476 U.S. at 79. See United States v. Wilcox, 487 F.3d 1163, 1170 (8th Cir. 2007) ("We have applied Batson to the federal government through the Due Process Clause of the Fifth Amendment.").

---

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

Without ruling on whether the defense had established a prima facie case of an equal protection violation, the district court asked the Government to explain its reasons for striking the Native American jurors. The Government stated that it struck Juror 2 because of concerns about the juror's ability to pass judgment on another person. The defense provided no argument in opposition, stating only that they "resist[ed]" the strike of Juror 2 because "[she] [was] a Native American juror." The Government stated it struck Juror 6 because she was part of a tribal council that was investigated for embezzlement. The defense responded in opposition that it was "noteworthy" that the Government struck another Native American juror and that this juror had no record of bias based on her answers in voir dire. The district court found that these were legitimate, race-neutral reasons that were not pretextual and denied the Batson challenges as to Jurors 2 and 6.

The Government stated it struck Juror 17 because the juror (1) noted on his juror intake form that his sister had prior drug charges and (2) displayed adverse body language when the Government questioned other jurors about drug possession. The defense responded that Juror 17 did not verbally react to the general questioning on drug possession and appeared to express that he could be neutral during the proceedings. When ruling on this Batson challenge, the court stated that it "didn't notice any tells by body language, although [Juror 17] [was] sitting in a position that's closer to the U.S. Attorney's table than to [the court]." The district court ultimately overruled the Batson challenge as to Juror 17 but cautioned that this "call [was] the closest" and that the court would be "really skeptical" if the Government struck another Native American juror.

Prior to trial, the district court considered Young's motion in limine to preclude the Government from introducing Young's recorded interview with Agent Kumley. The district court partially granted the motion, excluding most of the video under Federal Rule of Evidence 403 but admitting certain excerpts pertaining to Young's purpose in possessing the shotgun, including Young's statement that he and Plumman planned to transport two pounds of methamphetamine on the day of his arrest. The district court held that the discussion of Young's plans was relevant *res*

-4-

*gestae* evidence and admissible. Young renewed his objection at trial before the video was played for the jury, and the district court overruled it again. The jury returned a guilty verdict on all counts.

While out on bond for his firearm charges, Young had another encounter with law enforcement. On March 15, 2023, at around eight in the morning, Sergeants Samuel Antoine and Roxanne Hunger responded to a call reporting a running vehicle blocking the road in Soldier Creek on the Rosebud Sioux Tribe Reservation. Upon arrival, Sergeant Antoine located the vehicle and knocked on the driver's side window to rouse the sleeping driver, Young. Young stated that he had fallen asleep in his car after driving to visit his brother and admitted to drinking the night before. Meanwhile, Sergeant Hunger approached the vehicle from the passenger side and noticed what appeared to be a handgun located behind Young's back.[3] Sergeant Hunger used a hand signal to alert Sergeant Antoine of the presence of a weapon. Sergeant Antoine then directed Young to exit the vehicle. Young refused and attempted to place his vehicle in gear. Sergeant Antoine then reached into the vehicle and tried to physically restrain Young while Sergeant Hunger attempted to pull the key out of the ignition and activate the emergency brake. Both officers then deployed their tasers several times in an attempt to subdue Young, but they were unsuccessful. Young eventually exited the vehicle after being tased but was still physically fighting Sergeant Antoine. Young then "struck [Sergeant Antoine's] face," knocked him to the ground, and fled on foot; Young was apprehended an hour later.

On April 11, 2023, Young was indicted on one count of assaulting, resisting, and impeding a federal officer. Trial was held on November 1, 2023, and the jury returned a guilty verdict. Young was sentenced on all counts of conviction on February 1, 2024 to 84 months' imprisonment with 3 years of supervised release. Young now appeals.

---

[3]Upon inspection, the weapon was identified as a BB gun, but Sergeant Hunger testified that she could not tell the difference between it and her own Glock 40 handgun until she picked it up and examined it closely.

## II.

Young first argues that the district court erred in overruling his <u>Batson</u> challenges at his firearm trial, asserting that the Government unconstitutionally utilized three peremptory strikes on Native American venirepersons. "We review the district court's ruling of a <u>Batson</u> challenge for clear error." <u>United States v. Wolk</u>, 337 F.3d 997, 1007 (8th Cir. 2003).

### A.

"<u>Batson</u> provides a three-step process for a trial court to use in adjudicating a claim that a peremptory challenge was based on race." <u>Snyder v. Louisiana</u>, 552 U.S. 472, 476 (2008).

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

<u>Miller-El v. Cockrell</u>, 537 U.S. 322, 328-29 (2003) (citations omitted). "[T]he defendant must point to more than the bare fact of the removal of certain venirepersons and the absence of an obvious valid reason for the removal" before the prosecution is required to offer a race-neutral reason for the strike. <u>United States v. Young-Bey</u>, 893 F.2d 178, 180 (8th Cir. 1990). "[T]he defendant must identify facts and circumstances that support the inference of discrimination, such as a pattern of discriminatory strikes, the prosecutor's statements during voir dire suggesting discriminatory purpose, or the fact that white persons were chosen for the petit jury who seemed to have the same qualities as stricken [Native American] venirepersons." <u>Id.</u> (citing <u>Batson</u>, 476 U.S. at 96-97).

We first note that the defense did not satisfy its initial burden to show a prima facie case of discrimination under the Batson framework. When making the initial Batson challenge, Young's counsel stated:

> At this point, the defense would make a Batson challenge on the peremptory strikes from the government for Juror Number 2 . . . ; Juror Number 6 . . . ; and Juror Number 17 . . . . Our position is that these are three strikes from the [G]overnment that are Native American people, and we're making a Batson challenge.

A Batson challenge requires more than what was offered here—the defendant must "present facts to the district court which raise an inference that the [jurors] were struck *because of their race*." Young-Bey, 893 F.2d at 180. "The mere recitation of the fact that [Native American] jurors were struck from the jury cannot alone establish a prima facie case." Wolk, 337 F.3d at 1007. However, because the district court ruled on the objection after the race-neutral explanation was given, this failure to make a prima facie showing is arguably moot.[4] While "we can affirm the district court's judgment on any ground that is supported by the record," we decline to affirm on this basis and therefore proceed to steps two and three of the Batson analysis. See Taylor v. United States, 204 F.3d 828, 829 (8th Cir. 2000) (per curiam).

---

[4]A plurality of the Supreme Court has stated that "the preliminary issue of whether the [objecting party] had made a prima facie showing becomes moot" once a race-neutral explanation has been proffered and the district court has ruled on said objection. Hernandez v. New York, 500 U.S. 352, 359 (1991) (plurality opinion). Because that opinion was "splintered," without a concurring opinion that was a "logical subset of the plurality's rationale, or vice versa . . . the only binding aspect of the decision is its specific result." Animal Legal Def. Fund v. Reynolds, 8 F.4th 781, 785 (8th Cir. 2021). See also United States v. Hill, 31 F.4th 1076, 1081-82 (8th Cir. 2022), cert. denied, 143 S. Ct. 1036 (2023) (declining to affirm a conviction on the basis that the defense failed to create a prima facie showing under Batson without deciding whether the issue was moot); United States v. Walley, 567 F.3d 354, 357 (8th Cir. 2009) ("Our cases state (though arguably do not hold) that once the [G]overnment responded with a race-neutral explanation and the district court ruled on the ultimate question of purposeful discrimination, the preliminary prima facie issue became moot.").

B.

The Government stated that it struck Juror 2 because it had concerns about the juror's ability to pass judgment on another. We agree with our sister circuits that this is a valid, race-neutral reason for striking a juror. See United States v. Wilson, 314 F. App'x 239, 244-45 (11th Cir. 2009) (per curiam) (rejecting a Batson challenge because a juror stated that she would have "a difficult time passing judgment on another"); United States v. DeJesus, 347 F.3d 500, 508 (3d Cir. 2003) (same). The district court then looked to the defense, who had the burden "to prove that the facially valid reason [was] mere pretext and that the real reason for the strike was discrimination." United States v. Elliott, 89 F.3d 1360, 1365 (8th Cir. 1996) (citations omitted). Young's counsel made no pretext argument, merely remarking that he "just observed that this [was] a Native American juror, and [he] resist[ed]." "We uphold facially neutral reasons where the opponent of the strike makes no attempt in the trial court to demonstrate pretext." Id. at 1366. The district court did not clearly err in overruling the Batson challenge as to Juror 2.

As for Jurors 6 and 17, Young concedes that his argument on appeal is new: namely, that the Government failed to dismiss white jurors who were similarly situated to the stricken Native American jurors. In Hill, this Court acknowledged a "tension in the caselaw" regarding the standard of review for Batson arguments raised for the first time on appeal but ultimately declined to resolve the issue. 31 F.4th at 1082-84. Like the Court in Hill, we decline to decide "whether . . . Batson arguments raised for the first time on appeal are subject to plain-error review or no review at all" because "whichever way we resolve it, [Young's] argument fails." Id. at 1084-85. We therefore review Young's challenges as to Jurors 6 and 17 for plain error. Under Federal Rule of Criminal Procedure 52(b), "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." To prevail, Young must demonstrate (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. United States v. Olano, 507 U.S. 725, 732 (1993).

We note that "'[o]rdinarily,' forfeited claims of <u>Batson</u> error based on the failure to strike similarly situated venirepersons will not meet [the plain error] standard." <u>Hill</u>, 31 F.4th at 1084 (citation omitted). "This is because of the unique opportunities for sandbagging that correcting such errors would create." <u>Id.</u> Like the defendant in <u>Hill</u>, Young does not satisfy the first prong of the plain error analysis regarding Juror 6. The Government stated that it struck Juror 6 because she was on a tribal council that was under investigation for embezzlement, though she was never formally charged. Young did not refute this race-neutral explanation before the district court, only commenting that it was "noteworthy that this [was] another Native American" struck by the Government. Young now argues that the prosecution did not strike a white juror who had a similar involvement in an embezzlement case. However, the empaneled juror was only a character witness for a party tried for embezzlement. In our view, there is a difference between acting as a character witness for an accused embezzler and sitting on a tribal council that was investigated for embezzling. Thus, Juror 6 did not "share the characteristics of [the] stricken minority panel member," and there was no error, let alone one that was plain, in overruling the <u>Batson</u> challenge. <u>United States v. Jenkins</u>, 52 F.3d 743, 747 (8th Cir. 1995).

As for Juror 17, the Court in <u>Hill</u> explicitly cautioned against permitting a "similarly situated" <u>Batson</u> argument for the first time on appeal:

> Consider what would happen in a future case where eye contact or body language do differentiate a stricken venireperson from otherwise similarly situated venirepersons in a way that justifies the strike. If the objecting party were to make its "similarly situated" argument before the district court, then the district court would likely overrule the objection and, in the process, create a record on which the court of appeals could affirm. Whereas if the objecting party were to remain silent, then it would tee up a likely win at the court of appeals in the event that the trial does not go its way.

<u>Hill</u>, 31 F.4th at 1085. The Government stated it struck Juror 17 because (1) he noted on his intake form that his sister had prior drug charges and (2) his body

language indicated hostility to the Government's position. Young now argues that the first reason for the strike was pretextual because another white juror was not stricken after indicating on her intake form that her son had drug charges; this argument was not made before the district court below.

We acknowledge that the district court's rationale for overruling the Batson challenge is less than clear regarding Juror 17. The court noted that it "didn't notice any tells by body language" indicating hostility towards the Government's position but did acknowledge that Juror 17 was "sitting in a position . . . closer to the U.S. Attorney's table" than to the court. The court went on to rule that, while "the call [was] the closest," there was still "a legitimate, nondiscriminatory reason" for striking Juror 17. The problem is that the district court did not explicitly state which proffered reason ultimately resulted in overruling the Batson challenge: Juror 17's intake form statement, his body language, or both.

On review, we cannot say that these findings, or lack thereof, constitute plain error. All judges must evaluate "the prosecutor's state of mind based on demeanor and credibility" when ruling on a Batson challenge. Elliott, 89 F.3d at 1365 (citation omitted). While it is true that "[b]ody language and demeanor can be appropriate reasons to strike jurors," United States v. Davidson, 449 F.3d 849, 852-53 (8th Cir. 2006), "there is no district court finding or record evidence to support" the Government's body language justification for the strike of Juror 17. See Hill, 31 F.4th at 1084. If Young had raised this challenge below, he would have provided an opportunity for the district court to "create a record on which [this Court] could affirm." Id. at 1085. But, as Hill cautioned, "it is 'the reversal of a conviction such as [Young's]'—not the failure to reverse—that would 'seriously affect the fairness, integrity or public reputation of judicial proceedings.'" See id. (citation omitted). We therefore discern no plain error regarding Juror 17.

-10-

## III.

Young next argues that the district court abused its discretion by admitting evidence that Young planned to transport methamphetamine on the day of his arrest on firearm charges. "We review a district court's admission of evidence for abuse of discretion," United States v. Caballero, 420 F.3d 819, 821 (8th Cir. 2005), and will "revers[e] only when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict." United States v. Anderson, 783 F.3d 727, 745 (8th Cir. 2015) (citation omitted).

Generally, extrinsic "evidence of other crimes committed by a defendant is inadmissible" under Federal Rule of Evidence 404(b). United States v. Moore, 735 F.2d 289, 292 (8th Cir. 1984). But other crimes or bad acts "that form the factual setting of the crime in issue" are admissible as relevant, intrinsic evidence, as those acts are "'inextricably intertwined' with the crime charged." United States v. Heidebur, 122 F.3d 577, 579 (8th Cir. 1997) (citations omitted). Thus, this Court has "recognized that '[a] jury is entitled to know the circumstances and background of a criminal charge,' and [we have] permitted the introduction of evidence 'providing the context in which the crime occurred, i.e. the *res gestae*.'" United States v. LaDue, 561 F.3d 855, 857 (8th Cir. 2009) (first alteration in original) (citation omitted). "[W]hen evidence of other crimes is so blended or connected . . . ; or explains the circumstances [of the crime charged]; or tends logically to prove any element of the crime charged, it is admissible as an integral part of the immediate context of the crime charged." United States v. Fleck, 413 F.3d 883, 890 (8th Cir. 2005) (citation omitted). Because a jury "cannot be expected to make its decision in a void—without knowledge of the time, place, and circumstances of the acts which form the basis of the charge," *res gestae* evidence is relevant and admissible. Moore, 735 F.2d at 292. "In felon-in-possession cases, we have defined the scope of the *res gestae* to include the events immediately preceding the defendant's arrest, as well as the circumstances of the arrest itself." LaDue, 561 F.3d at 857-58 (citations omitted).

Young challenges the admission of statements from his interview with Agent Kumley in which he admitted that he and Plumman planned to travel to Sioux Falls to transport two pounds of methamphetamine on the day of his arrest. In Young's view, the planned drug run was too attenuated to the crimes charged and therefore not relevant, as the encounters with law enforcement resulted from a traffic violation, not drug involvement. Firearms, however, are "tools in the drug trade." United States v. Dierling, 131 F.3d 722, 732 (8th Cir. 1997). Thus, Young's statements to Agent Kumley provide the jury with relevant context as to *why* Young did not leave the shotgun after it was thrown out of the window and instead risked arrest to retrieve it: Young needed the weapon to successfully complete the drug run. This evidence was relevant and appropriately admitted because it allowed the jury to understand (1) why Young was with Plumman; (2) why Young needed to retrieve the shotgun; and (3) how it came into Young's possession. In short, the interview "completes the story" of Young's firearm charges.[5] United States v. Forcelle, 86 F.3d 838, 842 (8th Cir. 1996).

Still, intrinsic evidence is inadmissible if its probative value is "substantially outweighed by its prejudicial value." United States v. Bass, 794 F.2d 1305, 1313 (8th Cir. 1986); see Fed. R. Evid. 403. This court "accord[s] great deference to the [d]istrict [c]ourt's application of the Rule 403 balancing test." United States v. Rabins, 63 F.3d 721, 726 (8th Cir. 1995).

Young argues that the jury was misled into convicting Young for being a "bad guy" associated with drug activity and that the introduction of his interview led to jury confusion. Young's interview, however, "is not the kind of evidence that 'divert[s] the jury's attention from the material issues in the trial' but rather aids the jury" by informing them of why the shotgun was in the car in the first place. United States v. Mink, 9 F.4th 590, 604 (8th Cir. 2021) (alteration in original) (citation omitted). The jury was able to understand the context in which Young allegedly

---

[5]Because the conversation is admissible as *res gestae*, we do not address the district court's alternative ruling that it was admissible under Federal Rule of Evidence 404(b).

possessed a firearm based on his interview—it was not required to decide a collateral issue. See Firemen's Fund Ins. Co. v. Thien, 63 F.3d 754, 758 (8th Cir. 1995) ("Confusion of the issues warrants exclusion of relevant evidence if admission of the evidence would lead to litigation of collateral issues."). Finally, the district court partially granted Young's motion in limine and excluded over half of the video on the basis of unfair prejudice prior to trial. The district court carefully scrutinized the recorded interview, and its balancing analysis is "accord[ed] great deference." Rabins, 948 F.3d at 726. We conclude that the district court did not abuse its discretion because the admitted portions of the video interview directly explained Young's possession of the shotgun and its probative value was not substantially outweighed by unfair prejudice or confusing the issues.

IV.

Finally, Young contends the evidence was insufficient to support his convictions. "Sufficiency of evidence is highly fact intensive," United States v. Patton, 899 F.3d 560, 563 (8th Cir. 2018), and "[o]ur review of the sufficiency of evidence is limited." United States v. Beltz, 385 F.3d 1158, 1163 (8th Cir. 2004). "We review the sufficiency of the evidence de novo, viewing the evidence and credibility determinations in the light most favorable to the jury's verdict and reversing only if no reasonable jury could have found the defendant guilty." United States v. Ganter, 3 F.4th 1002, 1004 (8th Cir. 2021).

A.

Young argues that the evidence was insufficient to convict him on either of the firearm charges. To convict Young for possession of an unregistered firearm under 26 U.S.C. § 5861(d), the Government was required to prove, beyond a reasonable doubt, that (1) Young "knew he had possession" of the Winchester shotgun, (2) he "knew of the physical characteristics of the [shotgun] bringing [it] within the ambit of the act," and (3) the shotgun was "not registered to [Young] in the National Firearms Registration and Transfer Record." United States v. White,

-13-

915 F.3d 1195, 1197-98 (8th Cir. 2019) (citation omitted). A felon in possession conviction requires the Government to prove "that (1) the defendant sustained a previous conviction for a crime punishable by a term of imprisonment exceeding one year, (2) he knowingly possessed a firearm, and (3) he knew that he belonged to a category of persons prohibited from possessing a firearm, and (4) the firearm was in or affecting interstate commerce." United States v. Jackson, 110 F.4th 1120, 1123 (8th Cir. 2024). As to both counts, Young challenges only whether the evidence was sufficient to show he knowingly possessed the shotgun.

"A firearm may be possessed actually or constructively and such possession may be sole or joint." United States v. Guenther, 470 F.3d 745, 747 (8th Cir. 2006). "Actual possession is the knowing, direct, and physical control over a thing." United States v. Serrano-Lopez, 366 F.3d 628, 634 (8th Cir. 2004). "Constructive possession is established by proof that the defendant had control over the place where the firearm was located, or control, ownership, or dominion over the firearm itself." United States v. Cox, 627 F.3d 1083, 1085 (8th Cir. 2010). While "'mere physical proximity to a firearm' is insufficient to prove constructive possession . . . , 'knowledge of a firearm's presence, combined with control is constructive possession.'" United States v. Fisher, 965 F.3d 625, 630 (8th Cir. 2020) (citations omitted). "Additionally, 'knowledge can be inferred from circumstantial evidence, including any external indications signaling the nature of the weapon.'" White, 915 F.3d at 1198 (quoting Staples v. United States, 511 U.S. 600, 615 n.11 (1994)).

The Government presented evidence from which the jury could reasonably conclude that Young actually and constructively possessed the shotgun on two separate occasions. First, Young admitted he "checked out" the shotgun when Plumman brought the weapon to their residence a few days before his arrest. Young argues that this phrase makes it unclear whether he actually touched the gun. However, Young told Agent Kumley he "touched that shit" and even stated, when asked if he was "playing with [the shotgun] and everything," "well, yeah, I checked it out or whatever." This conversation provides a reasonable basis from which the

jury could conclude that Young had actual possession of the shotgun shortly before his arrest.

Second, on the day of his arrest, Agent Kumley testified that he observed an unknown object, later discovered to be the shotgun at issue, thrown from the passenger window of the vehicle possessed and driven by Young. After pulling over the vehicle, searching it, and allowing Young to go on his way, Agent Kumley returned to the scene and located the shotgun. Young also returned to the scene in his vehicle and was immediately arrested after Agent Kumley initiated a second traffic stop because Agent Kumley recognized Young and knew he could not possess a weapon given his status as a felon. The temporal and spatial proximity to the gun prior to it being thrown out of Young's vehicle in combination with control over the weapon is sufficient evidence of constructive possession. Young also had control over his vehicle and admitted he would not have pulled over while the gun was still inside. Additionally, Young revealed that he and Plumman planned to travel to Sioux Falls to transport two pounds of methamphetamine had they not been arrested. While Young stated in his interview that he did not know Plumman had the gun in the car as it was allegedly hidden in Plumman's sleeve, the jury reasonably rejected this contention in light of Young's admission that he told Plumman to "throw [the gun] out the window" and the fact that firearms are frequently utilized in the drug trade. See Dierling, 131 F.3d at 732. Young's argument that he was "in mere proximity of the firearm" was reasonably rejected by the jury given the extensive evidence of both actual and constructive possession of the shotgun. See also Cox v. Norris, 133 F.3d 565, 574 (8th Cir. 1997) (noting that it was within the province of the jury to "hear[] evidence and argument on the [defendant's] theory and cho[ose] to reject it"). Thus, we conclude that the evidence was sufficient to support Young's firearm convictions.

B.

To convict Young under 18 U.S.C. § 111(a), the Government was required to prove that (1) Young forcibly assaulted, resisted, opposed, impeded, intimidated, or

interfered with Sergeant Antoine; (2) Young's acts involved physical contact with Sergeant Antoine; (3) Young acted voluntarily or intentionally; and (4) Sergeant Antoine was engaged in the performance of his official duties at the time of the altercation. See United States v. LaRoche, 83 F.4th 682, 689 (8th Cir. 2023). Young challenges only that the evidence was insufficient to establish that his actions were voluntary or intentional.

"[T]o incur criminal liability under § 111 an actor must entertain merely the criminal intent to do the acts therein specified." United States v. Feola, 420 U.S. 671, 686 (1975). "The [G]overnment [is] not required to present direct evidence of [Young]'s subjective intent" for the jury to find that he acted knowingly and voluntarily. United States v. Wilkins, 25 F.4th 596, 599 (8th Cir. 2022). Rather, other circumstantial evidence presented at trial can sufficiently demonstrate the requisite intent. See id. ("[T]he officers' trial testimony describing [the defendant]'s actions amply demonstrates the required intent.").

A reasonable jury could find that Young voluntarily and intentionally struck Sergeant Antoine while attempting to flee from his car based on Sergeant Antoine's body camera footage and the testimony at trial. Upon reaching Young's car, Sergeant Hunger testified she saw what she reasonably believed was a weapon behind Young's back. Young was then commanded to exit the vehicle several times based on the presence of the firearm, and he did not comply. Instead, Young attempted to put his vehicle in gear to flee the scene, and Sergeant Antoine deployed his taser because he "felt like it was the best option to avoid any kind of serious harm." After being tased, Young stepped out of the vehicle, "c[a]me[] right at" Sergeant Antoine, tried to run away, then "struck [Sergeant Antoine's] face" with his arm. After knocking Sergeant Antoine to the ground, Young successfully fled on foot into a nearby residence. Much of this testimony was corroborated by the body camera footage played at trial, but even without considering the footage, it is well settled that "a victim's testimony alone can be sufficient to support a guilty verdict." United States v. Kenyon, 397 F.3d 1071, 1076 (8th Cir. 2005). The jury reasonably credited the testimony of Sergeant Antoine, finding that Young

-16-

deliberately struck him before fleeing and was not impaired after being tased, and this credibility determination is "entitled to special deference." Sullivan v. Minnesota, 818 F.2d 664, 666 (8th Cir. 1987) (citation omitted).

Young argues that he was unable to maintain intentional and voluntary control over his body during the interaction with Sergeant Antoine because he was tased several times, but Young did not present any expert testimony at trial supporting this claim. The jury only heard from Sergeant Antoine, who testified on cross-examination that, as part of his training, he knew tasers could cause involuntary movements. Despite this knowledge, Sergeant Antoine reiterated that Young did not look incapacitated after the tasers were deployed, and the jury reasonably credited this testimony. Young also asserts that the body camera footage played at trial "lends credence to [a] clumsier exchange." Appellant Br. 37. But any inference of "clumsiness" is unavailable here as it would require us to make an inference in favor of Young, not the verdict. See United States v. Wallace, 852 F.3d, 778, 783 (8th Cir. 2017) ("[W]e draw reasonable inferences in favor of the jury's verdict, not in favor of the defendant."). Based on the foregoing, we conclude that the evidence was sufficient to convict Young of assaulting Officer Antoine under 18 U.S.C. § 111(a).

V.

Accordingly, we affirm.

_____

-17-